Russell SIBLEY et al.

v.

INHABITANTS OF the TOWN OF WELLS et al.

Supreme Judicial Court of Maine.

Argued May 4, 1983.
Decided June 30, 1983.

Bourque & Clegg, Ronald D. Bourque (orally), Sanford, for plaintiffs.

Verrill & Dana, Michael T. Healy (orally), Portland, for defendants.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

In this M.R.Civ.P. 80B action, Russell and Mary Sibley appeal from the judgment of the Superior Court (York County) affirming a decision of the Town of Wells Zoning Board of Appeals (the Board) that (1) denied their application for sideline setback and minimum lot size variances to construct

a house, and (2) permitted construction of the house only if the Sibleys joined their two contiguous substandard lots and removed the existing mobile home from one of the lots. This was their second application with respect to the proposed house. The Superior Court held that "the Board did not err in denying plaintiffs' request for variances and that the record provided substantial evidence to support the Board's decision." The court also concluded that the doctrine of administrative *res judicata* barred the Board's consideration of the Sibleys' second application for the variances. On appeal to the Law Court, the Sibleys argue that 1) the doctrine of *res judicata* is inapplicable in the circumstances of their case;[1] 2) the Board's decision denying the requested variances was unreasonable, arbitrary, and unsupported by the evidence; 3) the contiguous lot provision of the Wells zoning ordinance is inapplicable to their property; and 4) the minimum lot size and sideline setback restrictions of the Wells zoning ordinance, as applied to their property, result in an unconstitutional "taking" by the Town of Wells. We deny the appeal.

In Wells the Sibleys own two contiguous lots, each with a 50-foot frontage on Eldridge Avenue and with a depth of 100 feet. They purchased lot # 30 in the Buena Vista Park subdivision in 1973, and since 1974 have lived on that lot in a mobile home that they placed there. In 1977, the Sibleys purchased lot # 29, immediately adjacent to lot # 30, for a price of $4,200. At the time that the Sibleys purchased it, lot # 29, at 5,000 square feet, did not conform to the 20,000 square foot minimum lot size requirement of the Wells zoning ordinance, which had been enacted in 1976. Lot # 29 is also subject to a deed restriction requiring any structure erected on it to be at least 26 feet wide. It is not possible to build a

26-foot wide structure on that lot and still comply with a zoning ordinance provision, in effect when lot # 29 was purchased by the Sibleys, requiring a 15-foot sideline setback.

Lot # 29 remained vacant until early 1980, when the Sibleys, without obtaining a building permit, constructed a concrete foundation on the lot. The foundation violated the zoning ordinance in two respects: (1) the lot did not meet the 20,000 square foot minimum lot size requirement, and (2) the foundation being 11 feet from one sideline and 4 feet from the other, violated the 15-foot sideline setback requirement. The Town's code enforcement officer served the Sibleys with a notice of violation and an abatement order on February 8, 1980.

On February 11, 1980, the Sibleys applied to the Zoning Board of Appeals for a variance from the sideline setback and lot size requirements of the ordinance, treating lots # 29 and 30, each of 5,000 square feet, as a single 10,000 square foot lot. After a public hearing the Board granted a variance from the minimum lot size requirement on the condition that the mobile home be removed after the completion of the new dwelling. The sideline variance was denied. The Board also treated both lots as one, and in order to comply with the Board's order, the foundation on lot # 29 would have had to be moved four feet closer to lot # 30. The Board's decision was not appealed to the Superior Court, and the foundation and the mobile home remained as they were.

Eighteen months later the Sibleys filed the application that is the subject of the present 80B action, seeking both sideline setback and minimum lot size variances for lot # 29 alone, in order to construct a 20-foot by 36-foot house on the foundation.[2]

1. Because we affirm the Superior Court's judgment on the merits without reliance on the doctrine of *res judicata*, we do not reach the question whether that doctrine is applicable to these administrative proceedings. We also intimate no opinion on whether, even if the doctrine were so applicable, it must be raised before the administrative agency as an affirma-

tive defense or may be asserted for the first time in the Superior Court during the 80B review.

2. Section IV(D)(12) of the zoning ordinance, which permits reapplication, states:
    12. If the Board of Appeals shall deny an appeal, a second appeal of a similar nature

The Board rendered a decision on the second application identical to its decision on the first. However, the granting of a minimum lot size variance only if the two lots were joined amounted to a denial of such a variance for lot # 29 alone. The Board based its decision on the following findings: (1) the land would yield a reasonable return under the Board's plan; (2) the land possessed no unique characteristics; (3) the granting of a sideline setback variance would alter the essential character of the locality; and (4) the hardship claimed by the Sibleys had resulted from their own actions during 1980.

The Sibleys sought 80B review in the Superior Court, challenging both the application to their property of section II(D)(5) (the contiguous lot provision) of the zoning ordinance[3] and the denial of minimum lot size and sideline setback variances. The Superior Court affirmed the decision of the Board, and the Sibleys now appeal that affirmance.

### I. *Validity of Denial of Variance*

■ Section IV(B)(3) of the zoning ordinance provides that a variance may be granted by the Board if the applicant can show "unnecessary hardship." 30 M.R.S.A. § 4963(3) (1978 & Supp. 1982–1983), which empowers municipal boards of appeal to grant variances, states:

> 3. Variance. A variance may be granted by the board only where strict application of the ordinance, or a provision thereof, to the petitioner and his property would cause undue hardship. The words "undue hardship" as used in this subsection mean:

A. That the land in question cannot yield a reasonable return unless a variance is granted;

B. That the need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. That the granting of a variance will not alter the essential character of the locality; and

D. That the hardship is not the result of action taken by the applicant or a prior owner.

The burden was on the Sibleys to prove at the agency level that they met all of these statutory requirements. *See Driscoll v. Gheewalla,* 441 A.2d 1023, 1029 (Me.1982). The Board concluded that the last three requirements were not met. The Superior Court was bound, as is this court, to affirm the Board's denial of the requested variances unless that denial was unlawful, arbitrary, capricious, or unreasonable. *See id.* The Superior Court correctly rejected the Sibleys' attack on the Board's decision.

### A. *Unique circumstances*

■ The Sibleys contend that because lot # 29 is only 50 feet wide, and because the property is subject to a deed restriction requiring any structure built upon it to be at least 26 feet wide, the circumstances of the lot are unique. However, the mere fact that the lot is substandard is not a unique circumstance; all the undeveloped lots in that neighborhood are of substandard size. *See* 3 R. Anderson, *American Law of Zoning* § 18.58 (1977). Although it is the deed restriction that combines with the small lot size to present a problem for the Sibleys, they did not show at the hearing before the

shall not be brought before the Board within one year from the date of the denial by the Board of the first appeal, unless in the opinion of a majority of the Board, substantial new evidence shall be brought forward, or unless the Board finds, in its sole and exclusive judgment, that an error or mistake of law or misunderstanding of facts shall have been made.

**3.** In 1979, section II(D)(5) of the zoning ordinance was enacted and it reads:

5. If two or more contiguous lots are in the same ownership on or after November 2, 1976, they shall be considered as one lot for the purpose of the minimum lot size provisions of this Ordinance, and no portion of said parcel shall be built upon or sold which does not meet the dimensional requirements of the Wells Zoning Ordinance. Variance of other dimensional requirements may be obtained only through action of the Board of Appeals.

Board that the deed restriction is unique to their property. In fact, there was discussion at the hearing that many parcels in the Buena Vista Park subdivision are burdened in the same way. Moreover, since the Sibleys do own the adjacent lot # 30, they can easily build without violating the sideline setback requirements of the ordinance. "Administrative relief is not warranted where the owner of contiguous substandard lots can solve his own problem by combining them to meet the minimum requirements of the zoning regulations. In such a case, his development plans may have to be revised, and he may not be able to extract the maximum profit from his tract, but he has not been denied reasonable use of his land." 3 Anderson, *supra*, § 18.54, at 291. In other words, ownership also of lot # 30 eliminates any hardship that otherwise might result to the Sibleys from the small size of lot # 29 and the deed restriction applicable to it.

### B. *Cause of Hardship*

The hardship relied upon by the Sibleys before the Board was the fact that if they could not build their house on lot # 29 the property would be worth only $1,000, as opposed to the $4,200 that they paid for it. The Sibleys claim that the hardship is not the result of their own action because the lot was established before the zoning ordinance was enacted. However, when a landowner purchases land with actual or constructive knowledge of the zoning restrictions, he may not be granted a variance on the grounds of undue hardship. 3 Anderson, *supra*, § 18.42. The Sibleys were charged with knowledge, when they bought lot # 29, of the zoning ordinance provisions that would create problems both because of the lot size and because of the deed restriction contained in their deed to the lot.[4]

4. Because the burden was on the Sibleys to establish that they meet each and every requirement of 30 M.R.S.A. § 4963(3), and because the evidence is clear that as to at least two of those requirements the Sibleys failed to

### II. *The Contiguous Lot Provision of the Wells Zoning Ordinance*

It is unnecessary for us to decide the proper construction and application of the contiguous lot provision that the Town of Wells added to its zoning ordinance in 1979. *See* n. 3 above. Even if the 1979 amendment had never been adopted, the Board's decision would not have been changed in any respect. As previously discussed, the undersize of lot # 29 is by no means unique in its neighborhood and any hardship upon the Sibleys is a result of their own action in buying the undersized lot in 1977 and constructing an illegal foundation upon it in 1980. In granting the Sibleys a conditional variance, the Board properly took into account the fact the Sibleys also owned lot # 30. *See* 3 Anderson, *supra*, § 18.59 ("Conditional variances, generally"). The Board's decision represents a carefully considered balancing of the interests of the Sibleys in maximizing the economic use of their property against the important social and public purposes of the zoning laws. By no means was the Board's action unlawful, arbitrary, capricious, or unreasonable.

### III. *Taking*

Finally, the Sibleys argue that the refusal of the Board to grant the requested variances constitutes a "taking" under the fifth and fourteenth amendments to the United States Constitution. They paid $4,200 for lot # 29, and as an unbuildable lot it is worth only $1,000. No taking exists unless the property has been rendered substantially useless. *Seven Islands Land Co. v. Maine Land Use Regulation Commission*, 450 A.2d 475, 482 (Me.1982). The Sibleys' land has substantial use and value in conjunction with the adjacent lot. No unconstitutional taking resulted from the Board's denial of the variances requested by the Sibleys.

meet their burden, we need not decide whether the Board was correct in deciding that the proposed use of lot # 29 would alter the essential character of the locality.

The entry is:

Judgment affirmed.

All concurring.